IN THE MATTER OF: C.E.L., A MINOR CHILD

No. COA04-1349

(Filed 19 July 2005)

1. **Child Abuse and Neglect— permanency planning proceeding—custody and guardianship—failure to make reasonable and timely progress to correct conditions that led to removal**

The trial court did not err in a permanency planning proceeding by placing custody and guardianship of the minor child with the maternal great-grandmother instead of respondent paternal aunt after finding that respondent had failed to comply with prior court orders or to make reasonable and timely progress to correct the conditions that led to the minor child's removal from respondent's home even though respondent contends there are no prior court orders that directly order her to take any action with regard to this minor child but rather only with regard to her biological child, because: (1) in the 14 October 2002 review order that addresses both minor children, the trial court ordered that respondent submit to random drug screens; (2) the trial court in a subsequent permanency planning order also ordered respondent to aggressively comply with the conditions of the Family Services Case Plan; and (3) competent evidence supports the trial court's finding of fact that respondent failed to comply with the trial court's orders including testimony from a social worker that respondent submitted to only two of the fourteen random drug screens that respondent was asked to take by the social worker, and the minor child's guardian ad litem testified that during her visits to respondent's home the minor child's bedroom was piled

[171 N.C. App. 468 (2005)]

high with boxes, the home was in general disarray with little food in the cabinets and no light in respondent's home, and seventy-five to eighty-five percent of the time respondent was ill or sick in bed when she visited respondent's home.

**2. Child Abuse and Neglect— permanency planning proceeding—custody and guardianship—finding of fact—not possible for minor child to be returned to home within six months following proceeding—physically incapable of caring for minor child—failure to make reasonable and timely progress to correct conditions that led to removal**

The trial court did not err in a permanency planning proceeding by placing custody and guardianship of the minor child with the maternal great-grandmother instead of respondent paternal aunt after finding that it was not possible for the minor child to be returned to respondent's home within six months following the proceeding even though respondent contends there was insufficient evidence to show that she was physically incapable of caring for the minor child, because: (1) respondent's testimony about her health problems is competent evidence that supports the trial court's finding of fact including that she had degenerative disk disease and was unable to work, she had high blood pressure, she was under the care of a physician and was taking methadone and hydrocodone; she applied for disability and had been appealing the decision for almost a year, and she needed surgery on a ruptured disc but was unable to obtain the surgery since she did not have insurance; and (2) the trial court did not rely solely on respondent's inability to care for the minor child when it found that it was not possible for the minor child to return to respondent's home within six months, but also found that respondent had failed to make reasonable progress in correcting those conditions that led to removal of the minor child from respondent's custody.

**3. Child Abuse and Neglect— permanency planning proceeding—legal guardianship—best interest of child—res judicata**

The trial court did not err in a permanency planning proceeding by finding that it was not in the minor child's best interest to be returned to respondent paternal aunt's home and that it was in the best interest that legal guardianship be awarded to the maternal great-grandmother even though respondent contends the trial court was bound by res judicata from changing its position on the

**IN RE C.E.L.**

[171 N.C. App. 468 (2005)]

issue and awarding guardianship to the maternal grandmother when it had previously found that the pending Chapter 50 action was the more appropriate venue to determine the minor child's best interests, because: (1) respondent failed to support this argument with any citations to legal authority in violation of N.C. R. App. P. 28(b)(6); (2) the 6 January 2005, nunc pro tunc 15 April 2003, permanency planning order in which the trial court referred to the Chapter 50 action did not purport to be a final adjudication on the merits and is not res judicata as to the issues in the 22 March 2004 permanency planning order, but instead stated that DSS should continue to make reasonable efforts to prevent or eliminate the need for placement of the minor child, respondent and DSS shall aggressively comply with the conditions of the Family Services Case Plan, and failure to do so may result in termination of parental rights; (3) giving the previous order res judicata effect would contravene the trial court's duty to consider all relevant evidence; (4) the trial court cannot be bound by a previous permanency planning order when changing needs and circumstances impact future permanency plans; and (5) N.C.G.S. § 7B-907 provides for initial as well as subsequent permanency planning hearings, thus showing the system anticipates the evolving nature of the best interests of and permanent plans for juveniles.

**4. Child Abuse and Neglect— permanency planning proceeding—conclusion of law—unable to provide adequately for minor child's care and supervision**

The trial court did not err in a permanency planning proceeding by concluding as a matter of law that respondent paternal aunt was unable to provide adequately for the minor child's care and supervision, because the trial court's findings of fact are supported by competent evidence and support this conclusion of law including: (1) respondent failed to comply with court orders; (2) respondent failed to make reasonable and timely progress; (3) it was not possible for the minor child to return to respondent's home within six months; and (4) it was in the minor child's best interest to not return to respondent's home but to live with her maternal great-grandmother.

Appeal by respondent from order entered 22 March 2004 by Judge C. Randy Pool in District Court, Rutherford County. Heard in the Court of Appeals 14 June 2005.

**IN RE C.E.L.**

[171 N.C. App. 468 (2005)]

*No brief for petitioner-appellee, Rutherford County Department of Social Services.*

*Smith, James, Rowlett & Cohen, L.L.P., by Margaret Rowlett, for Guardian ad Litem.*

*Leslie C. Rawls for respondent-appellant.*

McGEE, Judge.

Respondent, the paternal aunt of C.E.L., appeals from a permanency planning order placing custody and guardianship of C.E.L. with C.E.L.'s maternal great-grandmother, M.R.O. C.E.L.'s natural mother is deceased. C.E.L.'s natural father has not participated in the proceedings regarding C.E.L.'s placement. Respondent and her husband (R.E.H.) had obtained a temporary, nonprejudicial custody order for C.E.L. pursuant to an action brought under Chapter 50 of the North Carolina General Statutes (Chapter 50). R.E.H. is not a party to this appeal.

The evidence at the permanency planning hearing tended to show the following. C.E.L. was removed from respondent's home on 18 January 2002. E.L.H., respondent's son, was also removed at that time. The placement of E.L.H. is not at issue in this appeal. Rutherford County Department of Social Services (DSS) visited respondent's home and found that it was unsafe for C.E.L.:

> There were chemicals and cleaning supplies sitting out in the kitchen. There were two propane tanks and loaded guns in the closet of the living area. Various boxes of car parts, pill bottles and junk were lying around. Also found in the home were 5 grams of methamphetamines. There were also plastic Baggies and ties found with the methamphetamines. Drugs and paraphernalia were found on . . . a friend who was sleeping in the bedroom. [The friend] claimed a portion of the methamphetamines. There were five pieces of aluminum foil beside the bed on the nightstand in [respondent's and R.E.H.'s] bedroom. All of these pieces were charred and burned on the bottom. According to law enforcement, this is one means of smoking methamphetamines.

DSS completed a home study of respondent's home. DSS learned that respondent was unemployed and had filed for Social Security disability due to scoliosis and degenerative disc disease but had not yet been approved. R.E.H. also suffered from back injuries and

**IN RE C.E.L.**

[171 N.C. App. 468 (2005)]

received Social Security disability. DSS learned that respondent was taking the following medications: Hydrocodone, MS Contin, Methylphenidate, Alprazolam and Aygestin. In addition, R.E.H. was taking Oxycontin, APAP/Oxycodone (Percocet), Prozac, Protonix and Diazepam. Respondent and R.E.H. had also been the subjects of a federal drug investigation.

In a review order filed 14 October 2002, the trial court ordered that:

> [Respondent and R.E.H.] may exercise unsupervised visitation with [C.E.L. and E.L.H.] on alternate weekends providing they sign necessary releases so that DSS[,] the [Guardian ad Litem] and this [c]ourt can monitor their compliance with [m]ental [h]ealth and substance abuse treatment, and further providing that they submit upon request to random drug screens.

In a permanency planning order entered 6 January 2004, *nunc pro tunc* 15 April 2003, the trial court noted that respondent and R.E.H. were involved in a Chapter 50 custody action with M.R.O. The trial court rejected DSS's recommendation that guardianship be immediately awarded to M.R.O.:

> There is an ongoing Chapter 50 action with regard to [C.E.L.'s] best interest in this matter. Chapter 7B is not designed to determine best interests as is Chapter 50. [C.E.L.] appears to be happy and healthy where she is. The [trial court] will defer to the child custody action between [M.R.O.] and [respondent and R.E.H.] to determine [C.E.L.'s] best interests.

The trial court also ordered that: "[Respondent and R.E.H.] shall aggressively comply with the conditions of the Family Services Case Plan. Failure on the part of [respondent and R.E.H.] to do so may result in termination of their parental rights."

In a permanency planning order entered 22 March 2004, which is the subject of this appeal, the trial court made the following findings of fact:

> Following adjudication a case plan was placed into effect which required [respondent and R.E.H.] to attend parenting classes, submit to drug and/or alcohol assessments and follow up with any recommended treatment and to submit to random tests for the detection of controlled substances upon request of the

social worker. [Respondent and R.E.H.] did attend parenting classes. They also obtained assessments and have submitted to some random drug screens.

In an order entered in the Chapter 50 child custody action . . . a motion and order to show cause seeking to have [respondent and R.E.H.] held in contempt was dismissed. The order provided however, that [respondent and R.E.H.] were to obtain a blood test to determine their use, if any, of controlled substances that same day. [Respondent and R.E.H.] did not submit to such blood tests by their own admission until 11 to 18 days later. [Respondent and R.E.H.] have submitted to two random drug tests requested by DSS. [Respondent and R.E.H.] have been requested on at least 14 occasions to submit to drug tests by their social worker. Sickness of one or both [respondent and R.E.H.], unavailability or schedule conflicts have been offered as excuses for [respondent's and R.E.H.'s] failure to timely submit to random drug tests. Both [respondent and R.E.H.] take by prescription methadone and hydrocodone. [Respondent and R.E.H.] are not in substantial compliance with prior orders of this court requiring they submit to random drug tests.

. . . .

The guardian ad litem repeatedly requested [respondent and R.E.H.] to provide appropriate releases so that she could have access to their medical, mental health and treatment records. Those requests were not complied with. Instead [respondent] requested that the guardian ad litem see the care provider to obtain a release.

. . . .

. . . . During the time social worker McKinney has had responsibility for [C.E.L.] neither respondent [nor R.E.H.] signed any release so that she could obtain access to their medical records despite her repeated requests and despite prior orders of this court. (After the conclusion of all evidence it was stipulated and agreed by the parties that [r]espondent's Exhibit F could be admitted into evidence. That exhibit is purported [to be] a "Release for Medical Records" signed by [respondent] on September 26, 2002. However no box is checked to indicate which, if any[,] records are to be released. The doctor in question has never released any records to the social worker. A copy of

Exhibit F was not provided to DSS, the guardian ad litem, or [the trial] court until after the conclusion of [the] hearing.)

The trial court thereafter awarded legal guardianship of C.E.L. to M.R.O.

I.

Respondent assigns error to several of the trial court's findings of fact. A trial court's findings of fact in a permanency planning order are conclusive on appeal when they are supported by competent evidence. *In re Weiler*, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003). If supported by some competent evidence, the findings of fact are conclusive even if some evidence supports findings to the contrary. *In re B.P.*, 169 N.C. App. 728, 732-33, 612 S.E.2d 328, 331 (2005).

A.

[1] Respondent first assigns error to the trial court's finding of fact that respondent had failed to comply with prior court orders or make reasonable and timely progress to correct the conditions that led to C.E.L.'s removal from respondent's home. Respondent argues that there are no prior court orders that directly order respondent to take any action with regard to C.E.L., but rather only with regard to E.L.H. We disagree. In the 14 October 2002 review order that addresses both C.E.L. and E.L.H., the trial court ordered that respondent submit to random drug screens. The trial court, in a subsequent permanency planning order, also ordered respondent to "aggressively comply with the conditions of the Family Services Case Plan." Therefore, the trial court ordered respondent to take action with regard to C.E.L., and not E.L.H. only.

We also find that competent evidence supports the trial court's finding of fact. Social worker Anitra McKinney (McKinney) testified that respondent submitted to only two of the fourteen random drug screens that McKinney asked respondent to take. This testimony is competent evidence that respondent failed to comply with the trial court's orders. Furthermore, Louisa Davenport (Davenport), C.E.L.'s guardian ad litem, testified that during Davenport's visits to respondent's home, C.E.L.'s bedroom was "piled high with boxes" and the home was in general disarray. Davenport stated that there was little food in the cabinets and there was no light in respondent's home. Davenport also testified that "seventy-five to eighty-five percent" of the time that she visited respondent's home, respondent was ill or sick in bed. Thus, competent evidence supports the trial court's find-

ing that respondent had failed to make reasonable and timely progress to correct the conditions that led to C.E.L.'s removal from respondent's home.

B.

[2] Respondent next assigns error to the trial court's finding of fact that it was not possible for C.E.L. to be returned to respondent's home within six months following the proceeding. The trial court made the following finding:

> The [trial] [c]ourt finds that it is not possible for [C.E.L.] to be returned home immediately or within the next six months to the full legal custody of her former custodians and that it is not in the best interest of [C.E.L.] to return home because of [respondent's and R.E.H.'s] inability to provide for the care and supervision of [C.E.L.] and [respondent's and R.E.H.'s] failure to make reasonable progress in correcting those conditions that led to the removal of [C.E.L.] from [their] custody.

Respondent argues that there was not sufficient evidence to show that respondent was physically incapable of caring for C.E.L. Again, we disagree.

Respondent testified that she was thirty-eight years old, had a degenerative disk disease and high blood pressure. She stated that she was under the care of a physician and that she was on methadone and hydrocodone. Respondent testified that she applied for disability and had been appealing the decision for "almost a year[.]" She testified that she had a ruptured disk at L1-S5 that needed surgery, but she was unable to obtain the surgery because she did not have insurance. Respondent gave the following testimony on cross-examination:

Q  Okay. Now, you're seeking disability because of a disk problem or (inaudible) problem or both?

A  The disk problems because my doctor says that I wouldn't be able to work the job like I used to work because I was an injection mold operator. And she said that I would no longer be able to do that type o[f] a job.

Q  So did she say you're not (inaudible)?

A  She said that it would be hard for me to do any type of job that had a lot of standing, walking, or anything like that due to my back.

**IN RE C.E.L.**

[171 N.C. App. 468 (2005)]

Q The difficulties because of your back is standing and walking (inaudible)?

A I lay down sometimes. But if [C.E.L.] is there, I'm with her the whole time she's there.

Q So you can stand and walk when you're with [C.E.L.], but you can't stand and walk (inaudible)?

A I've not tried—not tried to work since then. I mean, I—nobody will hire anybody with back problems. They will tell you if you have back problems they won't hire you.

. . . .

A My medical problems do not keep me from taking care of [C.E.L.].

Q Now, you're completely able to take care of a four-year-old child?

A Yes, I am. I bathe her. I take her outside. I play with her. I ride a bicycle while she's riding her little four-wheeler. I ride horses with her. She has her own horse, everything.

Q You can ride horses with her?

A Yes.

Q With a degenerative disk disease?

A Yes, I do.

Q But you're incapable—

A It hurts, but I do it.

Q But you're incapable of work?

A That's what my doctor said.

Q Did your doctor say [or] determine whether you're not capable to work or did you determine it?

A No. She told me that I'm not to work, not to try to get a job. And I'm taking a chance riding horses on paralyzing myself. But if I can make [C.E.L.] happy, I'll do it.

We find that respondent's testimony about her health problems is competent evidence that supports the trial court's finding of fact that respondent was incapable of properly caring for C.E.L.

Furthermore, we note that the trial court did not rely solely on respondent's inability to care for C.E.L. when it found that it was not possible for C.E.L. to return to respondent's home within six months. Rather, the trial court also found that it would not be possible to return C.E.L. to respondent's home within the next six months because respondent had "failed to make reasonable progress in correcting those conditions that led to removal of [C.E.L.] from [respondent's] custody." As we have determined above, the trial court correctly found that respondent had failed to correct the conditions that led to C.E.L.'s removal. Therefore, respondent's failure to correct the conditions leading to C.E.L.'s removal provides independent support for the trial court's finding that it was not possible for C.E.L. to return to respondent's home within six months.

C.

[3] Respondent next assigns error to the trial court's finding of fact that it was not in C.E.L.'s best interest to be returned to respondent's home and that it was in C.E.L.'s best interest that legal guardianship be awarded to M.R.O. In support of this argument, respondent relies on the 6 January 2004, *nunc pro tunc* 15 April 2003, permanency planning order that deferred to the Chapter 50 child custody action. Respondent argues that since the trial court had previously found that the pending Chapter 50 action was the more appropriate venue to determine C.E.L.'s best interests, the trial court was bound by *res judicata* from changing its position on the issue and awarding guardianship to M.R.O.

We first note that respondent has failed to support this argument with any citations to legal authority, in violation of Rule 28(b)(6) of our Rules of Appellate Procedure. N.C.R. App. P. 28(b)(6) ("The body of the argument [of an appellant's brief] *shall* contain citations of the authorities upon which the appellant relies." (emphasis added)). Violations of the Rules of Appellate Procedure subject an appeal to dismissal. *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 401, 610 S.E.2d 360, 360 (2005). Furthermore, we find respondent's argument unpersuasive.

In order for the doctrine of *res judicata* to apply, there must be: "(1) a final judgment on the merits in an earlier lawsuit; (2) identity of the cause of action in the prior suit and the later suit; and (3) an identity of the parties or their privies in both suits." *Culler v. Hamlett*, 148 N.C. App. 389, 392, 559 S.E.2d 192, 194 (2002); *see also State ex rel. Utilities Commission v. Thornburg*, 325 N.C. 463, 468, 385 S.E.2d

451, 453-54 (1989). When an order "[leaves] the merits of the matter open for future adjudication[,]" there has not been a final judgment on the merits. *Whitmire v. Savings & Loan Assoc.*, 23 N.C. App. 39, 42, 208 S.E.2d 248, 250-51 (1974).

In *Whitmire*, the defendants argued that the order from receivership proceedings was *res judicata* as to all the claims at controversy in an action for the recovery of loan proceeds. *Id.* at 41, 208 S.E.2d at 250. However, the order from the receivership proceeds stated that loan proceeds could not be disbursed " 'until the controversy involved [was] adjudicated or terminated according to law.' " *Id.* at 42, 208 S.E.2d at 250. We held that, since the order "did not purport to be an adjudication on the merits but expressly left the merits of the matter open for future adjudication[,]" the receivership order was not *res judicata* as to the claims for loan proceeds. *Id.* at 42, 208 S.E.2d at 250-51.

In this case, the 6 January 2004, *nunc pro tunc* 15 April 2003, permanency planning order in which the trial court deferred to the Chapter 50 action did not purport to be a final adjudication on the merits. Rather, the order stated: "[DSS] should continue to make reasonable efforts to prevent or eliminate the need for placement of [C.E.L.]." It further ordered that: "[Respondent and R.E.H.] and [DSS] shall aggressively comply with the conditions of the Family Services Case Plan. Failure on the part of [respondent and R.E.H.] to do so may result in termination of their parental rights." This language indicates that the trial court intended to leave the matter of C.E.L.'s placement for further review and reconsideration. As a result, the order was not a final adjudication on the merits and is not *res judicata* as to the issues in the 22 March 2004 permanency planning order.

Furthermore, we find that giving the previous order *res judicata* effect would contravene the trial court's duty to consider all relevant evidence, N.C. Gen. Stat. § 7B-907(b) (2003), and "make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(c) (2003); *see also In re J.N.S.*, 165 N.C. App. 536, 538-39, 598 S.E.2d 649, 650-51 (2004). The trial court cannot be bound by a previous permanency planning order when changing needs and circumstances impact future permanency plans. N.C. Gen. Stat. § 7B-907 provides for initial, as well as subsequent, permanency planning hearings. This system thus anticipates the evolving nature of the best interests of and permanent plans for juveniles.

II.

**[4]** Respondent's last assignment of error contends that the trial court erred in concluding as a matter of law that respondent was unable to provide adequately for C.E.L.'s care and supervision. Conclusions of law are upheld when they are supported by findings of fact. *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997). We have already determined that the trial court's findings of fact that (1) respondent failed to comply with court orders, (2) respondent failed to make reasonable and timely progress, (3) it was not possible for C.E.L. to return to respondent's home within six months, and (4) it was in C.E.L.'s best interest for her not to return to respondent's home but to live with M.R.O. are supported by competent evidence. These findings of fact support the conclusion of law that respondent was unable to provide adequately for C.E.L.'s care and supervision. This assignment of error is overruled.

Since the trial court's findings of fact are supported by competent evidence, and the findings of fact support the conclusions of law, we find that the trial court did not err in awarding custody and guardianship of C.E.L. to M.R.O.

Affirmed.

Judges HUNTER and LEVINSON concur.