An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-381

NORTH CAROLINA COURT OF APPEALS

Filed: 21 October 2014

IN THE MATTER OF:

J.K. and L.K.

Lee County

Nos. 13 JA 15 and 16

Appeal by Lee County Department of Social Services and father from order entered 23 December 2013 by Judge Mary H. Wells in Lee County District Court. Heard in the Court of Appeals 30 September 2014.

*Tron D. Faulk for Lee County Department of Social Services, petitioner-appellant.*

*Mobley Law Office, PA, by Marie H. Mobley for guardian ad litem, appellee.*

*Assistant Appellate Defender J. Lee Gilliam for father, respondent-appellant.*

*Ewing Law Firm, PC, by Robert W. Ewing for mother, respondent-appellee.*

STEELMAN, Judge.

Where the trial court made implicit findings of fact that complied with N.C. Gen. Stat. § 7B-906.1, it did not err. Where custody was transferred from DSS to a non-parent relative,

father's constitutionally protected status as a natural parent was not implicated. Because a judge at a permanency planning and review hearing is tasked with a different determination than that of the judge at a prior adjudication hearing, the trial court was not bound by prior findings of fact from the adjudication hearing at a subsequent permanency planning and review hearing. Where evidence in the record supported the trial court's findings of fact, and these in turn supported the trial court's conclusions of law, the trial court did not abuse its discretion in determining that placement with grandparents was in the juveniles' best interests.

## I. Factual and Procedural History

J.K.'s parents married approximately six months after his birth in 2004. The parents subsequently separated and on 21 March 2007, entered into a consent order in which they agreed that T.K. (mother) should be awarded custody of J.K. and that C.K. (father) should pay the sum of $700 per month as child support to the North Carolina Child Support and Disbursement Unit in Raleigh. The order also required father to provide health insurance for the benefit of J.K. and to pay all of J.K.'s uninsured health care expenses.

On 19 April 2010, mother entered into a "Voluntary Custody and Guardianship Agreement" with J.K.'s maternal grandmother and her husband (collectively, grandparents) in which she purported to grant to them full custody of J.K. The agreement was signed only by mother, the maternal grandmother and the maternal step-grandfather.

In September 2011, mother gave birth to a second child, L.K., whose biological father is unknown. On 25 February 2013, Lee County Department of Social Services (DSS) filed juvenile petitions alleging that J.K. and L.K. were neglected and dependent juveniles. On 5 March 2013, grandparents filed motions to intervene in the juvenile proceedings. On 18 April 2013, the trial court entered an order dismissing the motions to intervene.

On 23 April 2013, Judge Jimmy L. Love, Jr. entered an order adjudicating the juveniles as neglected and dependent. The order, filed 21 May 2013, contained findings of fact that J.K. had witnessed his mother being assaulted by his maternal grandmother and step-grandfather while his mother was holding L.K., that both juveniles had witnessed acts of domestic violence between grandparents while they were residing with grandparents, and that they both witnessed acts of domestic

violence between mother and her new husband. The court further found that mother has "an extreme mental health and substance abuse history." The court ordered that DSS retain custody of the juveniles, and allowed DSS to place J.K. with father. J.K. began living with father on 10 May 2013.

Judge Wells conducted a permanency planning and review hearing during the 8 October 2013 and 22 October 2013 terms of Lee County District Court. On 23 December 2013, Judge Wells filed an order awarding custody of both juveniles to the maternal grandmother. The court also ordered that the plan for J.K. continued to be reunification with father. Father and DSS appealed. On 8 January 2014, this Court allowed the petition for writ of supersedeas filed by DSS, staying Judge Wells' order of 23 December 2013 pending disposition of this appeal.

## II. Standard of Review

"Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law." *In re J.C.S.*, 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004) (citing *In re Eckard*, 148 N.C. App. 541, 544, 559 S.E.2d 233, 235, *disc. review denied*, 356 N.C. 163, 568 S.E.2d 192-93 (2002)). "If the trial court's findings of fact are supported

by any competent evidence, they are conclusive on appeal." *Id.* at 106-07, 595 S.E.2d at 161 (citing *In re Weiler*, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003)). The disposition portion of the order is examined to determine whether the court abused its discretion in deciding what action is in the juvenile's best interest. *In re C.W.*, 182 N.C. App. 214, 219, 641 S.E.2d 725, 729 (2007).

### III. Findings of Fact and Conclusions of Law

The trial court's findings of fact pertinent to the issues raised in this appeal are:

> 11. On April 23, 2013, the respondent parents, DSS and GAL stipulated that the court adjudicate the juveniles as neglected & dependent juveniles as defined by NCGS 7B-101(15) and NCGS 7B-101(9) in that they did not receive proper care, supervision or discipline and that they lived in an environment injurious to their welfare, and that the juveniles' mother was unable to provide for the juveniles' care or supervision and lacked an appropriate alternative child care arrangement.
>
> 12. The stipulations of neglect and dependency, and the allegations therein, were made without stipulation, agreement or consent of [grandparents].
>
> 13. [Grandparents] have not been made parties to this action.
>
> 14. The plan at disposition on April 23, 2013 was reunification with the respondent mother or respondent father for [J.K.] and

reunification with the mother for [L.K.]. The Court found that it was in the best interests of [J.K.], with the consent of all parties, to be placed with the respondent father pending a kinship assessment. A kinship assessment [was] conducted and approved and the juvenile has been living with his father since May 10, 2013. The Court found that it was in the best interests of [L.K.] to remain in foster care at that time. Case plans were developed for the respondent mother and respondent father.

. . . .

20. Prior to the filing of the Petition by DSS, [father] acted inconsistently with his constitutionally protected parental status as it relates to [J.K.].

21. [Father] has been willingly and deliberately absent from [J.K.'s] life for the vast majority of [J.K.'s] life.

22. Prior to these proceedings, [father] chose not to have a relationship with [J.K.].

23. [Father] was aware of [mother's] inability to maintain stable housing, yet, [father] failed to take any steps to protect his son.

24. [Father] failed to communicate with or inquire about [J.K.] during his absence from [J.K.].

25. [Father] has willfully failed to visit with [J.K.] until DSS filed the Petition.

26. [Father] surrendered his parental rights to another biological child.

27. [Father] had the capacity and the

ability to visit with [J.K.], to inquire about [J.K.] and to take necessary steps to remove [J.K.] from the detrimental environment [J.K.] suffered while in the care of [mother].

28. [Father] had the ability and the capacity to exercise his parental rights to [J.K.] at all times.

29. [Father] could have made more of an effort to maintain contact with [J.K.].

30. [Father's] conduct was intentional whereby he withheld his love, his presence, his care and opportunity to display filial affection to [J.K.].

31. [Father's] actions were inconsistent with any desire to maintain a relationship with [J.K.].

32. The minor children's interests are best served by sustaining links with their natural families.

33. It is in the best interests of the minor children to live together.

34. [J.K.] and [L.K.] have a nurturing and important relationship with each other.

35. [J.K.] and [L.K.'s] bond and maintenance of their relationship plays an important role in their development and sense of identity.

36. [Grandparents] addressed the medical and mental health needs of the children when the children were in their care.

37. [J.K.'s] ticks [sic] were greatly diminished and even disappeared while in the custody of [grandparents].

38. [J.K.] is always very excited to see his sister, [L.K.].

39. [J.K.] assumed a parental role in caring for [L.K.].

40. [J.K.] was happy, relaxed and basically tick [sic] free when at his maternal grandmother's home with his sister.

41. As of March 1, 2013, [J.K.] did not verbalize any concerns or report any instances of domestic violence or significant conflict occurring within [grandparents'] home to Wynn's Family Psychology.

42. [J.K.'s] sudden and unsupported statement of alleged violence and excessive alcohol use in the [grandparents'] home, followed a period of time [J.K.] was in the sole care, control and influence of [mother].

43. [Grandparents] have materially complied with every request by the Department of Social Services.

44. [Grandparents] have loved and provided for the children, either fully or substantially, their entire lives.

45. [Grandparents] are not a danger to the children.

46. [Grandparents] have been the sole source of stability for both children over the course of their lives.

47. [Grandparents] are the only available kinship placement for both children, together.

48. Continued efforts to eliminate the need for placement of the juveniles and to reunify the Respondent Mother permanently would be inconsistent with the juveniles' health, safety, and need for a safe, permanent home within a reasonable period of time.

49. [J.K.] was placed with [father] on May 10, 2013.

50. [Father] paid court ordered child support in the amount of $700.00 per month prior to [J.K.] being placed with him by the Department of Social Services.

51. [Father's] child support obligation was suspended immediately upon [J.K.] being placed in his care.

52. The respondent father has taken [J.K.] to his counseling sessions, when requested to do so by DSS, and has otherwise cooperated with the Department of Social Services.

53. The Department of Social [S]ervices has asked [father] to: stay in contact, provide insurance for [J.K.], make doctor appointments, be on time for visits, maintain a working phone and provide DSS with his employment status.

. . . .

60. The plan of reunification of [J.K.] with his father should continue.

The court then made the following pertinent conclusions of law:

5. That it would be against the health and welfare of the juveniles and contrary to

their best interests to be returned to the custody of the respondent mother.

6. That continued efforts to eliminate the need for placement of the juveniles and to reunify with the Respondent Mother would be inconsistent with the juveniles' health, safety, and need for a safe, permanent home within a reasonable period of time and should therefore be ceased.

7. That the plan for the juveniles shall therefore change from reunification with the respondent mother to custody with the maternal grandmother, and this is in the best interests of the juveniles.

8. The plan for [J.K.] should continue to be reunification with respondent father.

9. That the legal and physical custody of [J.K. and L.K.] shall be placed immediately with their maternal grandmother, . . . and this is in their best interests.

The court further made conclusions of law that it was in the best interests of J.K. to receive psychological treatment from Wynn's Family Psychology and to have visitation with his parents.

## IV. Failure to Make Findings

DSS contends the court erred by failing to make findings of fact mandated by N.C. Gen. Stat. § 7B-906.1. We disagree.

N.C. Gen. Stat. § 7B-906.1 requires a court at every review and permanency planning hearing to consider certain criteria in determining the needs of the juvenile and the most appropriate

disposition, and "make written findings regarding those that are relevant[.]" N.C. Gen. Stat. § 7B-906.1(c),(d) (2013). Among the listed criteria is "[w]hether efforts to reunite the juvenile with either parent clearly would be futile or inconsistent with the juvenile's safety and need for a safe, permanent home within a reasonable period of time." N.C. Gen. Stat. § 7B-906.1(d)(3). Additionally, the statute requires the court to make certain findings of fact, if relevant, when the juvenile is not placed with a parent at the permanency planning hearing, including: (1) "[w]hether it is possible for the juvenile to be placed with a parent within the next six months and, if not, why such placement is not in the juvenile's best interests" and (2) "[w]here the juvenile's placement with a parent is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established . . . ." N.C. Gen. Stat. § 7B-906.1(e)(1),(2).

DSS argues that the court failed to make a written finding pursuant to N.C. Gen. Stat. § 7B-906.1(d)(3) as to whether reunification efforts with either parent clearly would be futile or inconsistent with the juvenile's safety and need for a safe, permanent home. It further argues that the court failed to make a written finding of fact pursuant to N.C. Gen. Stat. § 7B-

906.1(e)(1) as to whether it is possible for the juvenile to be placed with a parent within the next six months. N.C. Gen. Stat. § 7B-906.1(e)(1)

When a statute in the Juvenile Code calls for the court to make certain findings of fact, it is not necessary for the court to quote the exact language of the statute as long as the "order embraces the substance of the statutory provisions . . . ." *In re L.M.T.*, 367 N.C. 165, 169, 752 S.E.2d 453, 456 (2013). While it is the better practice for the trial court to expressly state in its findings that it found that placement with a parent was not possible or unlikely, we think that the trial court implicitly made these findings when it found that reunification with father should continue to be the permanent plan, that the juveniles should not be placed with their parents, and that it is in the juveniles' best interests that placement and custody of the juveniles be awarded to their maternal grandmother.

This argument is without merit.

## V. Abuse of Discretion

DSS and father contend that the court erred and abused its discretion by transferring custody of J.K. from DSS, and placement with father, to the maternal grandmother. They argue that the court erred by finding father acted inconsistently with

his constitutionally-protected status as a natural parent. They submit that the finding is not supported by clear and convincing evidence. We disagree.

"A natural parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child is a counterpart of the parental responsibilities the parent has assumed and is based on a presumption that he or she will act in the best interest of the child." *Price v. Howard,* 346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997). In a juvenile proceeding under Chapter 7B, a natural parent may lose this constitutionally-protected right to control, and permanent custody of the child may be awarded to a nonparent if the court either finds, based upon clear and convincing evidence, that (1) the natural parent is unfit, or (2) the natural parent's conduct is inconsistent with the constitutionally-protected status. *In re D.M.*, 211 N.C. App. 382, 385, 712 S.E.2d 355, 357 (2011). "[T]o apply the best interest of the child test in a custody dispute between a parent and a nonparent, a trial court must find that the natural parent is unfit or his or her conduct is inconsistent with a parent's constitutionally protected status." *In re B.G.,* 197 N.C. App. 570, 574, 677 S.E.2d 549, 552 (2009),

*appeal dismissed and disc. review denied,* 365 N.C. 212, 709 S.E.2d 919 (2011).

These principles, however, do not apply to the instant case because the court in the order under review did not transfer legal custody from a parent to a nonparent, but instead transferred legal and physical custody from DSS to a relative. We therefore need not address the arguments of father and DSS concerning that finding, as it was unnecessary and superfluous. We note, nonetheless, that at the time when the court awards permanent custody of J.K., it must make these determinations prior to awarding custody to a nonparent.

DSS and father also contend that Judge Wells improperly decided factual issues that had been previously decided by Judge Love in the adjudication and disposition order. They argue that Judge Wells improperly overruled a decision of another district court judge without a showing of changed circumstances. Father further argues that the doctrine of collateral estoppel prevented Judge Wells from re-litigating the issue of whether domestic violence occurred in grandparents' home. He also argues that the court received improper evidence in the form of unsworn testimony from grandparents' attorney and reports from a

psychologist obtained subsequent to the hearing. We are not persuaded.

As a general principle, "no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." *Calloway v. Ford Motor Co.,* 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972). This principle also applies to district court judges. *Shamley v. Shamley*, 117 N.C. App. 175, 183, 455 S.E.2d 435, 439-40 (1994). The rule, however, does not apply if the court's ruling is entered at a different stage of a proceeding and the materials considered by the subsequent judge are not the same. *Smithwick v. Crutchfield,* 87 N.C. App. 374, 376, 361 S.E.2d 111, 113 (1987). During the permanency planning and review stage of a juvenile proceeding a court is not bound by previous orders "when changing needs and circumstances impact future permanency plans." *In re C.E.L.*, 171 N.C. App. 468, 478, 615 S.E.2d 427, 432 (2005). The court at the permanency planning hearing is required to "consider information" from the parties to the proceeding "and any other person or agency that will aid in the court's review." N.C. Gen. Stat. § 7B-906.1(c).

Further, "[t]he court may consider any evidence, including hearsay evidence . . . from any person that is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." *Id.*

We also note that "[t]he purpose of abuse, neglect and dependency proceedings is for the court to determine whether the juvenile should be adjudicated as having the status of abused, neglected or dependent." *In re J.S.*, 182 N.C. App. 79, 86, 641 S.E.2d 395, 399 (2007). "Both the existence of the condition of neglect and its degree are by nature subject to change. Thus, an adjudication that a child was neglected on a particular prior day does not bind the trial court with regard to the issues before it at the time of a later termination hearing[.]" *In re Ballard,* 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). Collateral estoppel applies only when (1) there is a prior action resulting in a final judgment on the merits; (2) identical issues are involved; and (3) the issue was actually litigated and determined in the prior action and was necessary to the judgment. *McDonald v. Skeen*, 152 N.C. App. 228, 230, 567 S.E.2d 209, 211 (2002).

Here, the doctrine of collateral estoppel does not apply because there has not been a final judgment or resolution of this proceeding, which is still ongoing with further proceedings contemplated. The order entered by Judge Love suggests that he did not actually conduct an evidentiary hearing. The preamble to that order states:

> Prior to the call of the cases, the parties announced to the Court that a settlement had been reached as is embodied by the Memorandum of Order attached hereto and incorporated by reference. Pursuant to the parties' stipulations and the signed consents of the Memorandum and representations by counsel for the purposes of adjudication, the Court finds as follows:
>
> BASED UPON THE EVIDENCE, AND WITH CONSENT AND STIPULATION OF THE PARTIES, THE FOLLOWING FACTS HAVE BEEN PROVEN BY CLEAR, COGENT AND CONVINCING EVIDENCE:

Judge Love then proceeded to find as facts, *inter alia*, that the juveniles witnessed domestic violence in grandparents' home while their mother was residing there and that J.K. was "in counseling due to experiencing domestic violence."

At the permanency planning hearing, Judge Wells received evidence, as permitted by N.C. Gen. Stat. § 7B-906.1(c), from the maternal grandmother, who testified that she had been caring for J.K. full time pursuant to the voluntary custody agreement since June of 2010. She denied assaulting mother and described

the incident mentioned in the adjudication order as merely a "tug-of-war" over possession of a purse as mother was moving out of her house with the juveniles. Judge Wells also considered a report from J.K.'s psychologist dated 1 March 2013, in which the therapist stated that during the course of eight sessions beginning 21 September 2012 through the last session on 14 February 2013, J.K. never reported "any instances of domestic violence/significant conflict occurring within his grandparent's home." The psychologist also noted "[J.K.] described having positive relationships with his grandparents, mother, and sister throughout treatment." Mother also testified at the permanency review and planning hearing that she does not have "a violent history" with her mother, although they will "bicker and argue" with each other.

Judge Wells had different materials before her at the permanency planning and review hearing. She was tasked with determining the best interests of the juveniles as of that time, a different determination than what was made at the adjudication phase of the proceedings. The arguments of DSS and father are overruled.

DSS also contends that the court abused its discretion by awarding custody of J.K. and L.K. to the maternal grandmother

despite evidence of domestic violence and alcohol abuse in the home. Father additionally argues that the court abused its discretion by removing J.K. from a home where he was thriving. We disagree.

"A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Findings of fact numbers 33-35, 38-40, and 46-47 show that the two juveniles have a nurturing and relaxed relationship with each other which is in their best interests to maintain and that placement with grandparents is the only available kinship placement for both. Findings of fact numbers 36-37 and 43-46 indicate that grandparents have been providing for the children's needs of love, companionship, medical and mental health treatments, and a safe, stable home. Findings of fact are binding "where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery,* 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984). We hold that there is evidence in the record to support the findings. As these

findings reflect a reasoned decision by the trial court, we find no abuse of discretion.

These arguments are without merit.

AFFIRMED.

Judges CALABRIA and McCULLOUGH concur.

Report per Rule 30(e).