IN THE MATTER OF: WEILER

No. COA02-295

(Filed 17 June 2003)

**1. Appeal and Error— appealability—change in planning order for abused children—dispositional**

The Court of Appeals denied a motion to dismiss the appeal of a permanency planning order for abused and neglected children where petitioner contended that the appeal was interlocutory because it merely continued custody in DSS rather than changing custody. An order that changes the permanency plan from reunification with the mother to termination of parental rights is a dispositional order that fits squarely within the statutory language of N.C.G.S. § 7B-1001.

**2. Termination of Parental Rights— permanency planning order—required findings—futility of reunification—health and safety of children**

A permanency planning order for abused and neglected children was reversed where the order changed the plan from reunification to termination of parental rights but did not include the findings required by N.C.G.S. § 7B-507(b). The trial court based its decision primarily on respondent's "continued obstructionist attitude and refusal to accept responsibility for her children's behaviors, coupled with her repetitive switching of jobs and residence." The court made no findings that reunification efforts would be futile or that the health and safety of the children were inconsistent with the efforts required by the statute.

Appeal by respondent from order entered 19 September 2001 by Judge Mitchell L. McLean in Wilkes County District Court. Heard in the Court of Appeals 22 January 2003.

IN RE WEILER

[158 N.C. App. 473 (2003)]

*James N. Freeman, Jr., for respondent-appellant.*

*No brief filed for petitioner-appellee.*

HUDSON, Judge.

Tabitha Weiler ("respondent" or "mother") appeals from a permanency planning order ("order") ceasing efforts to reunify her with her two sons, Raymond Weiler ("Raymond") and Christopher Weiler ("Christopher"). For the reasons discussed herein, we reverse the order of the trial court.

## Background

On 18 May 1998, petitioner Wilkes County Department of Social Services ("petitioner" or "DSS") filed a juvenile petition alleging that Raymond and Christopher were abused and neglected and obtained a non-secure custody order for the children. On 1 June 1998, the trial court ordered that legal custody of the children continue with petitioner and that physical custody of the children be with their maternal grandparents. However, on 17 July 1998, the trial court returned both legal and physical custody to petitioner due to the maternal grandmother's violation of certain conditions of the custody order. On 15 February 1999, the trial court ordered that legal and physical custody of the children continue with petitioner, but ordered that the children be placed in the home of their paternal grandparents. The children resided with their paternal grandparents for approximately one week, after which they were returned to the custody of DSS due to the grandparents' inability to care for them.

On 27 April 2000, the trial court entered a permanency planning order pursuant to G.S. § 7B-907. The order directed petitioner to institute proceedings to terminate respondent's parental rights. On 21 September 2000, at the suggestion of Stephanie Sparks, respondent's case worker at DSS, the court entered a consent order changing the permanency plan from termination of parental rights to reunification with the mother.

On 15 December 2000, the children were placed back in respondent's home on a trial basis. On 29 March 2001, a report of inappropriate discipline involving Raymond prompted DSS again to remove the children from respondent's home.

On 19 September 2001, the trial court ordered that legal and physical custody of the children remain with petitioner and that the per-

manency plan change from reunification with the mother to termination of parental rights. In this order the trial court made the following pertinent findings of fact:

10. No relatives are available who can provide a safe and suitable home for the children within a reasonable period of time, nor is there a relative available who could assume guardianship of the children.

11. The Wilkes County Department of Social Services has utilized reasonable efforts to eliminate the need for placement of the children outside of a parent's home. Indeed, the record reflects that the Department of Social Services has provided more care and services and has afforded the mother of the children more opportunities than in most cases. This is particularly true in light of the Department's having sought and obtained permission to pursue termination of parental rights, and then affording the mother another opportunity to keep her children.

12. It is apparent that the mother has a very antagonistic attitude toward service providers in this case, particularly the Department of Social Services.

13. Although the mother reports that she has not had much contact with the father of her children, the Court notes that the mother is once again living in Onslow County so that the children may be near their paternal grandparents. This is so despite the fact that almost all of the mother's family, including the children under consideration in these cases, reside in Wilkes County, North Carolina.

14. The mother has another child, Tiffany, who is not at issue in these cases. Apparently, David Weiler is also the father of that child; and that Mr. Weiler has periodic contact with the child, despite the mother's testimony that she does not know where the father is.

15. The Court notes that the mother has changed her residence to and from Onslow County on at least three (3) occasions since the children have been in foster care. The mother states that the most recent change in her residence was due to more jobs being available in Onslow County.

16. The children continue to have serious behavior problems and are continuing in counseling. Both of the children take medications for their Attention Deficit Hyperactivity Disorder.

17. In their current foster home placement, an additional staff member has been added to each shift so that there will be sufficient persons to monitor the behavior of Raymond and Christopher.

18. The mother continues to blame the Department of Social Services for any problems which she and her children are having; and that the mother continues to accept little, if any, responsibility for her children's behaviors or for those events which led to the removal of the children in 1998.

***

20. It is not in the juveniles best interests for them to be returned to the home of their mother. The mother's continued obstructionist attitude and refusal to accept responsibility for her children's behaviors, coupled with her repetitive switching of jobs and residence, leads the Court to conclude that the mother is still exhibiting inconsistent behaviors. The Court notes that since moving to Sneads Ferry, North Carolina, the mother has had at least three (3) jobs.

21. The court has been presented with no evidence which indicates that there are any barriers to adoption of the juveniles.

22. The best plan of care to achieve a safe, permanent home for the juveniles within a reasonable period of time is pursuit of termination of parental rights and adoption.

Based upon the aforementioned findings of fact, the trial court reached the following conclusions of law:

2. It is in the best interest and general welfare of the above-named children for their legal and physical custody to remain with the Wilkes County Department of Social Services.

3. The appropriate plan for the juveniles is pursuit of termination of parental rights and adoption.

Motion to Dismiss

[1] Before addressing respondent's arguments, we must first address petitioner's motion to dismiss this appeal. Petitioner asserts that this appeal is interlocutory and not properly before us, arguing that the 19 September 2001 order from which this appeal was taken is not a "final order" as defined in G.S. § 7B-1001. The thrust of petitioner's

argument is that because the order did not change custody, but merely continued custody in DSS, it was not an order of disposition after an adjudication of abuse, neglect or dependency. For the following reason, this motion is denied.

G.S. § 7B-1001 provides that review of any "final order of the court in a juvenile matter . . . shall be before the Court of Appeals." It further provides that a "final order shall include: (1) Any order finding absence of jurisdiction; (2) Any order which in effect determines the action and prevents a judgment from which appeal might be taken; (3) *Any order of disposition after an adjudication that a juvenile is abused, neglected, or dependent*; or (4) Any order modifying custodial rights." G.S. § 7B-1001 (2001) (emphasis added).

Here, the juveniles were adjudicated neglected by order 1 June 1998. On 27 April 2000, the court ordered that the permanency plan for the juveniles be termination of parental rights. Subsequently, pursuant to DSS's request, the court changed the permanency plan from termination of parental rights to reunification with the mother. The present order again changed the disposition from reunification with the mother to termination of parental rights. An order that changes the permanency plan in this manner is a dispositional order that fits squarely within the statutory language of section 7B-1001. *See In re Eckard*, 144 N.C. App. 187, 547 S.E.2d 835 (2001); *appeal after remand*, 148 N.C. App. 541, 559 S.E.2d 233 (2002). Thus, the appeal is properly before us and petitioner's motion to dismiss is denied.

## Respondent's arguments

[2] Respondent argues that the trial court's findings of fact are not supported by competent evidence and, in turn, that the findings of fact do not support the conclusions of law. All dispositional orders of the trial court after abuse, neglect and dependency hearings must contain findings of fact based upon the credible evidence presented at the hearing. *In re Helms*, 127 N.C. App. 505, 510-11, 491 S.E.2d 672, 676 (1997). If the trial court's findings of fact are supported by competent evidence, they are conclusive on appeal. *In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991). In a permanency planning hearing held pursuant to Chapter 7B, the trial court can only order the cessation of reunification efforts when it finds facts based upon credible evidence presented at the hearing that support its conclusion of law to cease reunification efforts. *Eckard* at 199, 547 S.E.2d at 842. Although we believe there was competent evidence presented at the hearing to support the findings of fact contained in

the order, we do not believe the findings support the conclusions. Thus, for the reasons discussed below, we reverse the order of the trial court.

The purpose of a permanency planning hearing is "to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." G.S. § 7B-907(a) (2001). The trial court has the authority to cease reunification efforts pursuant to section 7B-507(b):

> (b) In any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
>
> (1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time.

G.S. § 7B-507(b) (2001). "When a trial court is required to make findings of fact, it must make the findings of fact specially." *In re Harton*, 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003). Additionally, "[t]he trial court may not simply 'recite allegations,' but must through 'processes of logical reasoning from the evidentiary facts' find the ultimate facts essential to support the conclusions of law." *Id.* (citations and quotation marks omitted).

Here, the trial court made no such findings. The court found as fact neither that efforts toward reunification with respondent would be futile nor that such efforts would be inconsistent with the juveniles' health, safety, and need for a permanent home. The trial court came closest to making these required findings in paragraphs 20 and 22. Number 22, designated as a finding of fact, provides that "The best plan of care to achieve a safe, permanent home for the juveniles within a reasonable period of time is pursuit of termination of parental rights and adoption." We believe, however, that despite its inclusion in the findings of fact, number 22 is actually a conclusion of law and, thus, does not satisfy the court's obligation under section 7B-507(b). *See Johnson v. Adolf*, 149 N.C. App. 876, 878 n.1, 561 S.E.2d 588, 589 n.1 (2002) ("Although this statement is included . . . as a finding of fact, and thus inappropriately labeled, this Court will

treat it as a conclusion of law"). Further, finding number 20 is a summing up of the types of problems the court identified in respondent's efforts, to wit: "obstructionist attitude," "refusal to accept responsibility," "repetitive switching of jobs and residence," and "inconsistent behaviors." None of these problems were found to be inconsistent with the juveniles health, safety and need for a permanent home. Thus, we conclude that the findings the court did make are insufficient to support the conclusions of law.

The order here is similar to that in *Eckard*, where this Court found that the findings of fact did not support the conclusions of law that ceased reunification efforts with the mother. There the court found as fact that:

> (1) Respondent has had relationships with five different men in the two years preceding the hearing, (2) respondent is "gullible and naive," (3) respondent would require "ongoing assistance from professionals for a number of reasons," with "no guarantees that she would [not] form questionable relationships, which could put her daughter at risk," (4) respondent has an I.Q. "which ranks in the extremely low range," (5) "[the juvenile] is too bonded to her current placement [with her foster parents] to risk her young and fragile well-being at this time" and (6) respondent did not do more to protect [the juvenile].

*Id.* at 198-99, 547 S.E.2d at 842. The Court went on to hold that "all of the above findings do not constitute sufficient evidence to support the conclusion that it is in [the juvenile's] best interest to cease reunification efforts with her natural mother." *Id.* at 199, 547 S.E.2d at 842. On reconsideration after remand, this Court again held that these findings were not sufficient to support the conclusion of law to change the permanency plan from reunification to termination of parental rights. *In re Eckard*, 148 N.C. App. 541, 559 S.E.2d 233 (2002), *disc. review denied*, 356 N.C. 163, 568 S.E.2d 192 (2002).

Likewise, in *In re Nesbitt*, 147 N.C. App. 349, 555 S.E.2d 659 (2001), this Court reviewed an order terminating the mother's parental rights. In *Nesbitt*, the trial court found as fact that the mother previously worked as an exotic dancer; was arrested for lewd and indecent conduct; worked approximately seven different jobs since the juvenile was removed from her home; and had been evicted from her apartment, lived in a motel part time, and lived in a shelter since her children had been removed from her home. *Id.*

This Court held that these facts did not provide an adequate basis for terminating the mother's parental rights, noting that "we are impressed with the mother's continued efforts to secure employment" and that "the record shows that in spite of her troubled work history, Ms. Nesbitt has maintained child support payments while [the juvenile] was in the custody of [social services] and has maintained a home for almost a year." *Id.* at 359-60, 555 S.E.2d at 666.

Here, the trial court ordered the cessation of reunification efforts based on findings less extensive than those made in *Eckard* and *Nesbitt.* The trial court based its decision primarily on respondent's "continued obstructionist attitude and refusal to accept responsibility for her children's behaviors, coupled with her repetitive switching of jobs and residence." The court, however, as mentioned above, made no statutory findings that reunification efforts would be futile or that the health and safety of the children were inconsistent with such efforts as required by section 7B-507(b).

Thus, we conclude that, in light of its failure to make the findings required by statute, the court's findings do not support its conclusions of law that efforts to reunify respondent with her children should cease and that the "appropriate permanent plan for the juveniles is pursuit of termination of parental rights and adoption."

Reversed.

Judges MARTIN and STEELMAN concur.