TIMMONS-GOODSON, Judge.
Respondent appeals the trial court order continuing physical custody of her minor granddaughter with Cumberland County Department of Social Services ("CCDSS"), continuing the permanent plan of guardianship, and relieving CCDSS of its reunification efforts with respondent. For the reasons discussed herein, we affirm the trial court order.
The facts and procedural history pertinent to the instant appeal are as follows: Respondent is the maternal grandmother of a minor child, Molly.[1] On 31 January 2002, CCDSS filed a petition ("the petition") alleging that Molly was an abused and neglected juvenile as defined by N.C. Gen. Stat. § 7B-101(1) and (15). According to the petition, respondent had been given custody of Molly in 1992 because Molly's mother, Shelly,[2] was incapable of caring for Molly. The petition further alleged in pertinent part:
3. [Shelly] had been sexually abused by relatives and caretakers when she was a child and in the custody of her mother, [respondent].
4. [Respondent] was non[-]supportive of [Shelly's] disclosures of sexual abuse.
5. On 1-25-93, a sexual abuse referral was made alleging that [respondent's] boyfriend was sexually abusing [Molly]. The named perpetrator had also sexually molested [Shelly] when she was a minor.
6. During visitation with her mother and stepfather, [Shelly] and [Joe],[3] [Molly] was in the same bed with them while they were having sexual relations.
7. On 6-29-00 [respondent] agreed not to allow [Molly] to be left alone with [Shelly] and [Joe].
8. On 10-25-00, Sexual Abuse was substantiated because [Molly] was sexually molested by [Shelly's] boyfriend [Donald].[4]
9. [Respondent] was not supportive of [Molly's] disclosure off [sic] sexual abuse by [Donald].
10. [Respondent] was the ex-girlfriend of [Donald].
11. [Respondent] again agreed to and signed a Protection Plan that [Molly] would have onlysupervised visits with her mother at the home of [respondent].
12. [Respondent] allowed [Molly] to continue to visit [Shelly] and [Joe] unsupervised usually every other weekend.
13. [Joe] posed [Molly] topless and took pictures of her.
14. [Shelly] encouraged [Molly] to pose for these pictures even though the child did not want to do it.
15. [Respondent] did not believe that [Joe] had taken pictures of [Molly].
Following the filing of the petition, the trial court issued an order for non-secure custody on 31 January 2002. On 4 February 2002, the trial court found the grounds alleged in the petition to be true and ordered that legal and physical custody of Molly be with CCDSS for placement in foster care or with suitable relatives. Following a child planning conference held on 11 February 2002, the trial court ordered that respondent be granted supervised visitation with Molly at CCDSS but that Shelly and Joe have no contact with Molly. The trial court then scheduled a non-secure custody hearing for 4 March 2002.
On 4 March 2002, the trial court reviewed its previous findings and conclusions and ordered that the 11 February 2002 visitation plan remain in effect and that physical custody remain with CCDSS for placement in foster care or with relatives. The trial court also ordered that the matter be continued until a 2 April 2002 non-secure custody hearing.
On 2 April 2002, the trial court found that respondent "had failed to take steps to protect" Molly, that respondent was not "afit or proper person to have care, custody or control of" Molly, and that "based on the underlying file and this file the likelihood that conditions will be alleviated is extremely unlikely." The trial court thereafter concluded that it was in Molly's best interests and welfare to continue custody with CCDSS. In an order filed 23 April 2002, the trial court ordered as follows:
1. That legal and physical custody shall be with the CCDSS for placement in foster care or with suitable relatives, if there are any identified.
2. That the Court will authorize out of state home study, but reserves ruling for results.
3. That the no contact order shall remain in effect with [Shelly], [Joe], and [respondent] pending further orders of this Court.
4. That [Molly] shall be enrolled in counseling.
5. That [respondent] shall complete a psychological evaluation and parenting assessment.
6. This matter shall be continued until 7/10/02 for Review.
Following subsequent court review, in an order filed 2 August 2002, the trial court ordered that the permanent plan for Molly should be guardianship or placement with relatives, and therefore legal and physical custody of Molly should remain with CCDSS for placement in foster care. The trial court then continued the matter until subsequent court review scheduled for 3 October 2002.
On 31 October 2002, the trial court completed the court review contemplated in the 2 August 2002 order. In an order filed 4 December 2002, the trial court incorporated its previous findingsof fact as set forth in the adjudication and disposition order and non-secure custody orders. The trial court further found in pertinent part:
4. [Molly] was Adjudicated Neglected and Abused on 4/2/02 and legal and physical custody remained with CCDSS.
. . . .
6. That [Molly] continues to do well in foster care.
. . . .
9. That the Parenting Assessment done by Diane Jackson on [respondent], including the Summary and Recommendations[,] have been reviewed in great detail. That the findings indicate that [respondent's] lack of judgment would continue to be a concern if the minor child were returned to her care.
10. That there is no evidence to change the Court's previous findings nor is it likely to change in the foreseeable future. . . .
Based upon these findings, the trial court concluded as follows:
1. Reasonable efforts are being made to reunite [Molly] with her family, or provide a permanent plan for her care.
2. Return of [Molly] to the parents['] custody could be contrary to the welfare of [Molly].
3. That in the best interest of [Molly], legal and physical custody shall remain with CCDSS for placement in foster care or with suitable identifiable relatives.
Based upon its findings of fact and conclusions of law, the trial court ordered in pertinent part:
1. That legal and physical custody shall be with CCDSS for placement in foster care or with suitable identifiable relatives.
2. That the permanent plan remains guardianship with [a] relative or other court approved caretaker.
. . . .
4. That there shall be no visitation or contact between [Molly] and the respondents that are here in North Carolina.
5. That CCDSS is relieved of reunification efforts.
It is from this order that respondent appeals.
The only issue on appeal is whether the trial court erred by permitting CCDSS to cease its efforts to reunify Molly with respondent. Respondent argues that the trial court's findings of fact are not supported by competent evidence and that the trial court's conclusions of law are not supported by its findings of fact. We disagree.
We note initially that respondent's brief contains arguments supporting only three of the original four assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2004), the omitted assignment of error is deemed abandoned. Therefore, we limit our present review to those assignments of error properly preserved by respondent for appeal.
We further note that, in its brief, CCDSS challenges the propriety of the instant appeal, arguing that respondent's appeal of a court review hearing is interlocutory and should be dismissed. For the reasons discussed below, we are not convinced by this argument, and therefore we review the merits of the appeal.
N.C. Gen. Stat. § 7B-1001 (2003) provides that "review of anyfinal order of the court in a juvenile matter" shall be before the Court of Appeals. The statute further provides in pertinent part:
A final order shall include:
. . . .
(3) Any order of disposition after an adjudication that a juvenile is abused, neglected, or dependent;
Id. This Court has previously held that "[a]n order that changes the permanency plan [from reunification with the mother to termination of parental rights] is a dispositional order that fits squarely within the statutory language of section 7B-1001." In re Weiler, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003). We have also previously reviewed a decision by a trial court relieving DSS of its reunification efforts following a permanency planning review, see In re Everett, 161 N.C. App. 475, 588 S.E.2d 579 (2003), and we have recently reviewed a decision by the trial court relieving DSS of its reunification efforts following a regularly scheduled court review. In re H.W., ___ N.C. App. ___, 594 S.E.2d 211, disc. review denied, 358 N.C. 543, 599 S.E.2d 46 (2004).
In the instant case, as in H.W., respondent appeals the trial court's order relieving CCDSS of its reunification efforts following a regularly scheduled court review. We note that N.C. Gen. Stat. § 7B-507(b) (2003) expressly authorizes cessation of reunification efforts in "a review order." Thus, in light of the statutory authorization provided to the trial courts as well as the relevant case law, we conclude that the trial court's decision to relieve CCDSS of its reunification efforts in the instant casecorresponds to those types of decisions contemplated by § 7B-1001's definition of a "final order." Therefore, we decline to dismiss respondent's appeal as interlocutory, and we choose instead to examine the merits of respondent's appeal.
N.C. Gen. Stat. § 7B-507(b) provides as follows:
In any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
(1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time;
(2) A court of competent jurisdiction has determined that the parent has subjected the child to aggravated circumstances as defined in G.S. 7B-101;
(3) A court of competent jurisdiction has terminated involuntarily the parental rights of the parent to another child of the parent; or
(4) A court of competent jurisdiction has determined that: the parent has committed murder or voluntary manslaughter of another child of the parent; has aided, abetted, attempted, conspired, or solicited to commit murder or voluntary manslaughter of the child or another child of the parent; or has committed a felony assault resulting in serious bodily injury to the child or another child of the parent.
"All dispositional orders of the trial court after abuse, neglect and dependency hearings must contain findings of fact based upon the credible evidence presented at the hearing." Weiler, 158 N.C. App. at 477, 581 S.E.2d at 137. "If the trial court's findings of fact are supported by competent evidence, they are conclusive on appeal." Id. "When a trial court is required to make findings of fact, it must make the findings of fact specially." In re Harton, 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003). Furthermore, "[t]he trial court may not simply `recite allegations,' but must through `"processes of logical reasoning from the evidentiary facts"' find the ultimate facts essential to support the conclusions of law." Id. (citation omitted).
In Weiler, the trial court "based its decision [to relieve DSS of its reunification efforts] primarily on respondent's `continued obstructionist attitude and refusal to accept responsibility for her children's behaviors, coupled with her repetitive switching of jobs and residence.'" 158 N.C. App. at 480, 581 S.E.2d at 138. However, on appeal, this Court noted that the trial court "made no statutory findings that reunification efforts would be futile or that the health and safety of the children were inconsistent with such efforts as required by section 7B-507(b)." Id. Thus, we concluded that, "in light of its failure to make the findings required by statute, the court's findings do not support its conclusions of law that efforts to reunify respondent with her children should cease and that the `appropriate permanent plan for the juveniles is pursuit of termination of parental rights and adoption.'" Id.
As detailed above, in the order relieving CCDSS of its reunification efforts in the instant case, the trial court foundthat Molly "was Adjudicated Neglected and Abused on 4/2/02 and legal and physical custody remained with CCDSS." The trial court also found that respondent's "lack of judgment would continue to be a concern if [Molly] were returned to her care," and that "there is no evidence to change the Court's previous findings nor is it likely to change in the foreseeable future." The trial court further found that it was in Molly's best interests to require that "legal and physical custody shall remain with CCDSS for placement in foster care or with suitable identifiable relatives." The trial court also referenced its previous findings of fact regarding respondent's fitness and propriety to have care, custody, and control of Molly. Specifically, the trial court referenced the adjudication and disposition order filed 23 April 2003, in which the trial court found that respondent was not a "fit or proper person to have care, custody or control of [Molly]," and the trial court subsequently concluded that "[n]o reasonable means were available to protect [Molly], short of out-of-home placement, because continuation in the custody of [respondent] could be contrary to the welfare of [Molly], and therefore the lack of services was reasonable."
The trial court's previous findings regarding respondent's suitability to care for Molly, coupled with the trial court's continuing "concern" regarding Molly's placement with respondent, indicates that further reunification efforts would be futile in the instant case. The trial court specifically found that no evidence existed to change its previous determinations, and that "change inthe foreseeable future" was unlikely. After hearing arguments from the parties and reviewing and incorporating its previous findings of fact, the trial court made findings of fact from the bench and referred to a recent parenting assessment which, according to the trial court, indicated "that [respondent's] social judgment [i]s of great concern and future victimizations continue to be possible should [respondent] be returned as the primary caretaker." Each of these findings support a determination that further reunification efforts would be futile as well as inconsistent with Molly's health and safety. Thus, after careful examination of the record before this Court, we conclude that competent evidence supports the trial court's findings of fact, and that the trial court made sufficient findings to support its decision to relieve CCDSS of its reunification efforts. Therefore, we hold that the trial court did not err in relieving CCDSS of its reunification efforts in the instant case.
Affirmed.
Judges HUNTER and McCULLOUGH concur.
Report per Rule 30(e).

For the purposes of this opinion, we will refer to the minor child by the pseudonym "Molly."

For the purposes of this opinion, we will refer to Molly's mother by the pseudonym "Shelly."

For the purposes of this opinion, we will refer to Molly's stepfather by the pseudonym "Joe."

For the purposes of this opinion, we will refer to Shelly's boyfriend by the pseudonym "Donald."