IN THE MATTER OF L.D.B.

No. COA05-519

(Filed 7 March 2006)

**Appeal and Error— appealability—permanency planning order**
        An appeal from an initial permanency planning order was dismissed as interlocutory. *In re B.N.H.*, 170 N.C. App. 157, is directly controlling.

Appeal by respondent from order entered 21 May 2003 by Judge Jimmy L. Love, Jr., in Johnston County District Court. Heard in the Court of Appeals 2 November 2005.

*Holland & O'Connor, P.L.L.C., by Jennifer S. O'Connor for petitioner-appellee.*

*Sofie W. Hosford for respondent-appellant.*

IN RE L.D.B.

[176 N.C. App. 561 (2006)]

CALABRIA, Judge.

Daniel B. ("respondent") appeals the trial court's initial permanency planning order that maintained legal custody of L.D.B. ("L.D.B.") with her mother, Stephanie M. ("Stephanie M."), denied visitation rights to respondent, and repeated previous directives of the trial court that reunification efforts be ceased. We dismiss as interlocutory.

L.D.B. lived with respondent and Stephanie M. Although Stephanie M. had named another man as L.D.B.'s father, paternity testing confirmed that respondent was L.D.B.'s biological father. In September 2002, the Johnston County Department of Social Services ("D.S.S.") filed an initial juvenile petition. D.S.S. alleged that L.D.B. was neglected as a result of domestic violence in her presence causing her to live in an environment injurious to her welfare. An amended petition alleged that the juvenile was dependent and further alleged a history of domestic violence between respondent and Stephanie M:

> [B]oth parents admitt[ed] to domestic fights, which include[d] an incident where the mother attacked [respondent] with a knife, while [respondent] was holding [L.D.B.]. Both [respondent and Stephanie M.] have been instigators in the domestic violence . . . and have a history of substance abuse that contributed to the domestic violence.

D.S.S.'s Intact Families Unit worked with Stephanie M. and respondent on a weekly basis beginning on 4 October 2002. Respondent admitted using marijuana, and Stephanie M. admitted using marijuana and alcohol. As part of a Family Services Case Plan, both respondent and Stephanie M. were required to complete domestic violence prevention programs, substance abuse evaluations, and psychological evaluations. The plan further required that respondent and Stephanie M. follow all recommendations from the programs and evaluations. Respondent and Stephanie M. were also required to maintain safe and stable housing. Additionally, both were to refrain from engaging in acts of coercion, intimidation, or violence against each other, and they were to submit to random drug testing performed by a social worker.

Subsequently, conflict continued within the family. Respondent made accusations against Stephanie M. and her family regarding death threats, and he reported that on a couple of occasions Stephanie M. had assaulted him, although he did not press charges.

## IN RE L.D.B.

[176 N.C. App. 561 (2006)]

Respondent filed four complaints and motions for domestic violence protective orders and *ex parte* domestic violence orders against Stephanie M. All of them were dismissed. Stephanie M., in turn, claimed respondent was controlling.

In September 2002, respondent and Stephanie M. entered a visitation and custody plan. Respondent had primary physical custody, and Stephanie M. had joint legal custody. On 25 October 2002, upon hearing that respondent was fleeing to California, Stephanie M. filed for emergency custody of L.D.B. At the conclusion of an *ex parte* custody hearing on 5 November 2002, the trial court granted D.S.S. custody of L.D.B. Subsequently, Stephanie M. stipulated to neglect, and the trial court adjudicated L.D.B. neglected as to respondent. Stephanie M. presented evidence at the adjudication hearing that she completed a substance abuse program, followed through on recommendations from a psychological evaluation, substantially participated in a domestic violence program, completed parenting classes, and maintained stable housing and employment.

Respondent, on the other hand, had lost his job and was working for his mother. In addition, he had been diagnosed with Acute Adjustment Disorder with Mixed Emotion and Conduct, which would require six months of treatment. He failed to attend two anger management courses, although he had on one occasion attended a class. He additionally failed to attend parenting classes and complete a psychological evaluation. Respondent also had moved to Carteret County, and Carteret County's D.S.S. reported difficulty in both verifying the services that respondent had received and in conducting home studies "due to the number of excuses he gives for not being able to meet with the social worker." In the dispositional phase, the trial court ordered D.S.S. to return L.D.B. to the care, custody, and control of Stephanie M. The trial court also suspended respondent's visitation and granted Stephanie M. a restraining order against respondent. Respondent was ordered not to have any direct or indirect contact with Stephanie M. or the children; however, the trial court asked him to locate an individual who would be willing to supervise visitations.

The trial court subsequently conducted a review hearing in this matter on 12 March 2003 and 30 April 2003. Respondent had made little progress, and the trial court concluded it was in L.D.B.'s best interests that respondent "not have visitation until such time as he provides to the Court a completed psychological evaluation." At the latter review hearing, respondent again failed to complete the psy-

IN RE L.D.B.

[176 N.C. App. 561 (2006)]

chological evaluation, and the trial court relieved D.S.S. of further efforts toward reunification of L.D.B. with respondent.

An initial permanency planning hearing in this matter was held on 21 May 2003. Although respondent again failed to complete parenting classes, he had completed his psychological evaluation. The evaluation revealed that respondent had a "failure to cope with life's demands and major depression." The report further revealed that "[h]is potential for aggressive behavior is high and his capacity for perceptual distortion based on perceived threats to himself increase the likelihood of his acting out in response to his fears." Finally, the report warned that respondent's "retreating into fantasy when stressed limits the number of reasonable options he might exercise in solving problems."

The trial court found that "based upon the history of this case, including but not limited to domestic violence in the presence of the juvenile, as well as upon [respondent's] continued action to attempt to have contact [with] the mother and the results of [respondent's] psychological evaluation, it would not be in the juvenile's best interest to have unsupervised contact with [respondent]." Because respondent failed on numerous occasions to identify anyone to supervise visitations in Johnston County between himself and the children, the trial court repeated its previous directive that respondent be denied visitation. The trial court also ordered both D.S.S. and the *Guardian ad Litem* relieved of further efforts toward reunification with respondent and terminated further reviews in the matter, in accordance with § 7B-906(d) (2003), since custody was restored to a parent. Respondent appeals.

We initially address whether this case is interlocutory. North Carolina General Statutes § 7B-1001 (2003)[1] states that appeal may be taken from "any final order of the court in a juvenile matter[.]" The statute defines a "final order" to include:

(1) Any order finding absence of jurisdiction;

(2) Any order which in effect determines the action and prevents a judgment from which appeal might be taken;

---

1. North Carolina General Statutes § 7B-1001 has recently been amended; however, the amended version of the statute applies only to petitions or actions filed on or after 1 October 2005. Because the petition in this case was filed prior to this date, we apply the statute in effect at the time of filing and related case law.

(3) Any order of disposition after an adjudication that a juvenile is abused, neglected, or dependent; or

(4) Any order modifying custodial rights.

N.C. Gen. Stat. § 7B-1001(1-4) (2003).

In *In the Matter of B.N.H*, 170 N.C. App. 157, 611 S.E.2d 888 (2005), this Court recently held

[i]n our view, the statutory language of G.S. § 7B-1001(3), referring to an "order of disposition after an adjudication that a juvenile is abused, neglected, or dependent," means the dispositional order that is entered after an adjudication under G.S. § 7B-905, and does not mean every permanency planning, review, or other type of order entered at some unspecified point following such a disposition.

*B.N.H.*, 170 N.C. App. at 160, 611 S.E.2d at 890.

The *B.N.H.* panel of this Court narrowly interpreted an earlier opinion, *In re Weiler*, 158 N.C. App. 473, 581 S.E.2d 134 (2003). The *B.N.H.* panel distinguished *Weiler* as follows:

In *Weiler*, the permanency planning order on appeal changed the plan from reunification to adoption. The order on appeal here is not such an order, not only because it was an initial permanency planning order but also because it repeats the previous directives of the court that reunification be ceased. We therefore limit the holding of *Weiler* to the specific facts of that case, and decline to extend its reasoning further.

*B.N.H.*, 170 N.C. App. at 161, 611 S.E.2d at 891.

*B.N.H.* is directly controlling on the facts at issue. The order on appeal in this case is an initial permanency planning order that does not change the plan from reunification to adoption. Furthermore, the order "repeats the previous directives of the court that reunification [with respondent] be ceased." *See id.* Moreover, the order on appeal is not a "final order" under any of the other orders listed in § 7B-1001 because it is not: "[an] order finding absence of jurisdiction," "[an] order . . . that prevents a judgment from which appeal might be taken," or an "order modifying custodial rights." *See* N.C. Gen. Stat. § 7B-1001. Accordingly, this appeal is interlocutory, and we dismiss the appeal.

Dismissed.

Judges HUDSON and BRYANT concur.