IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-297

 No. COA21-27

 Filed 6 July 2021

 Beaufort County, No. 19-JA-140

 IN THE MATTER OF: B.H.

 Appeal by respondent from order entered 21 September 2020 by Judge Regina

 R. Parker in Beaufort County District Court. Heard in the Court of Appeals 8 June

 2021.

 Miller & Audino, LLP, by Jay Anthony Audino, for Petitioner-Appellee Beaufort
 County Department of Social Services.

 Elon University School of Law Guardian ad Litem Appellate Advocacy Clinic,
 by Senior Associate Dean Alan D. Woodlief, Jr., for guardian ad litem.

 Lisa Anne Wagner for Respondent-Appellant Mother.

 CARPENTER, Judge.

¶1 Respondent-Mother appeals from a permanency planning order (the “Order”)

 entered 21 September 2020 granting permanent guardianship of B.H. to her paternal

 aunt, E.H., and E.H.’s long-term partner, L.G., and ordering supervised visitation to

 Respondent-Mother and B.H.’s biological father. On appeal, Respondent-Mother

 contends the trial court failed to follow the statutory mandate prescribed in N.C. Gen.
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 Stat. § 7B-600(c) (2019) and N.C. Gen. Stat. § 7B-906.1(j) (2019). Specifically, she

 argues the trial court erred in granting guardianship to E.H. and L.G. without first

 verifying that both guardians understood the legal significance of the appointment of

 guardianship, as statutorily required. After careful review, we affirm the Order

 because there is competent evidence in the record to support the trial court’s

 verification.

 I. Factual & Procedural Background

¶2 B.H. is the oldest of Respondent-Mother’s four children and has a different

 father from her siblings.1 The North Carolina Department of Social Services’

 engagement with Respondent-Mother’s children dates back to 2015. On 4 February

 2015, Respondent-Mother was arrested on drug-related charges in Carteret County

 while her two children were present in the car with her as she “conduct[ed] drug

 deals.” Following Respondent-Mother’s arrest, Carteret County Department of Social

 Services obtained legal custody of B.H. and her younger half-sister. E.H. and L.G.

 served as a relative placement for the two children from March 2015 to June 2016.

¶3 Nearly four years later, on 14 January 2019, the Beaufort County Department

 of Social Services (“DSS” or “Petitioner-DSS”) received a report from the Craven

 County Department of Social Services alleging: (1) the children were dirty and

 1 None of B.H.’s three half-siblings is, nor is either of the children’s fathers, a subject

 of this appeal.
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 unkept; (2) the children spoke about living in a camper with no water or power; (3)

 the family slept closely together in a van to keep warm; and (4) there was a warrant

 for Respondent-Mother’s arrest for violating school attendance laws. After receiving

 the report, DSS provided in-home services to assist the family with enrolling the

 children in school and obtaining stable housing.

¶4 On 31 January 2019, DSS received information from the Carteret County

 Department of Social Services reporting that it had become involved with

 Respondent-Mother’s family due to concerns she slept half the day, kept her two

 oldest girls in her bedroom, and did not properly care for her children. The family

 could not be located; therefore, DSS could not continue to provide its in-home services

 to the family.

¶5 On 15 October 2019, DSS received a report alleging improper care of juveniles

 due to Respondent-Mother’s children not attending school. The report further alleged

 Respondent-Mother had just given birth to her fourth child, and the family had no

 stable housing. Concerns of past substance abuse by Respondent-Mother as well as

 by Z.H., the husband of Respondent-Mother and the father of B.H.’s three half-

 siblings, were also raised in the report. A social worker contacted Z.H. on 18 October

 2019. Z.H. informed the social worker that the family was staying in a hotel and

 stated he would provide the hotel information later that evening; however, neither

 Z.H. nor Respondent-Mother provided the location of the family or otherwise made
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 themselves or the children available to the social worker. The social worker was

 unable to locate the family despite making diligent efforts. Because DSS could not

 locate the family during the assessment period, the 15 October 2019 report was closed

 on 27 November 2019.

¶6 On 5 December 2019, an additional report was made to DSS. DSS sent this

 report to the Onslow County Department of Social Services as the family was

 suspected of living in Onslow County with a family member. The report alleged the

 family was living with a registered sex offender, B.H. was not enrolled in school, and

 B.H. was in need of a physical examination. Again, the family could not be located;

 however, Onslow County Department of Social Services was able to make contact

 with Respondent-Mother by telephone, and she acknowledged the report.

¶7 On 10 December 2019, DSS received a similar report, which was based on

 B.H.’s lack of enrollment in school, her parents’ failure to make her physical

 examination appointment so B.H. could enroll in school, and the family’s

 homelessness and “couch surfing.” The report also expressed concerns of the

 children’s safety due to potential substance abuse by Respondent-Mother, Z.H., and

 Z.H.’s sister with whom the family was staying, as well as the possible presence of a

 registered sex offender in the sister’s home. Due to DSS’s allegations and concerns,

 including the possibility of the family fleeing out-of-state with the minor children,

 DSS sought emergency custody of the four minor children. DSS learned Respondent-
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 Mother was scheduled for treatment services at the Agape Center on 10 December

 2019, and found the family at the location on that day. DSS obtained custody of the

 children at the facility with the assistance of the Washington Police Department. The

 Washington Police Department arrested Respondent-Mother based on three active

 arrest warrants related to violating school attendance laws and absconding from

 probation, which had been imposed in part because of a previous school truancy

 conviction. Respondent-Mother was placed in jail for a thirty-day sentence.

¶8 Following the events on 10 December 2019, DSS filed the same day a juvenile

 petition alleging neglect and dependency of B.H. by Respondent-Mother and B.H.’s

 biological father. Also on 10 December 2019, the trial court issued an order for

 nonsecure custody, which was filed 11 December 2019. The nonsecure custody order

 awarded placement authority to DSS, and a hearing was scheduled for 18 December

 2019 to determine the need for continued nonsecure custody.

¶9 Upon the filing of the petition, all four children were placed in licensed foster

 homes. After B.H. and her older half-sister were placed in a home together, B.H.’s

 biological father requested during a team meeting with the social worker that a home

 study be completed on his sister, E.H. Consequently, Respondent-Mother asked that

 B.H.’s half-sister also be placed with E.H. since the siblings had already been placed

 in a foster home together. E.H. and L.G. agreed to be considered as a placement for

 B.H. only. The Carteret County Department of Social Services completed a home
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 study on their residence at the request of DSS on 4 February 2020, and the residence

 was recommended for placement of B.H. on 19 February 2020. The trial court ordered

 B.H. to be placed with E.H. and L.G. on 19 February 2020; B.H was placed in their

 home on 21 February 2020.

¶ 10 On 18 December 2019, the matter came on for hearing on the need for

 continued nonsecure custody before the Honorable Keith Mason. Judge Mason

 entered the Order on Need for Continued Nonsecure Custody the same day. The

 order concluded the best interests of B.H. would be served by continuing DSS’s

 custody of the juvenile pending a further hearing and by allowing appropriate

 visitation. The trial court ordered the juvenile remain in the nonsecure custody of

 DSS pending further hearings and granted weekly supervised visitation to

 Respondent-Mother and B.H.’s father.

¶ 11 On 16 June 2020, the trial court held pre-adjudication, adjudication, and

 disposition hearings before Judge Mason on DSS’s petitions alleging B.H. and her

 three half-siblings were neglected and dependent. Respondent-Mother was not

 present for the hearings. The trial court adjudicated the four children neglected and

 dependent. The trial court entered its disposition order the same day and found, inter

 alia, that “[t]he present risk of harm to the children if placed into [Respondent-

 Mother] and [Z.H.’s] home is high” based on the current report of neglect, Respondent-

 Mother’s substance abuse issues, and the family’s lack of stable housing. The trial
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 court made the following pertinent conclusions of law:

 1. the juveniles cannot return home to any parent
 immediately, but it is possible that the children
 could return to a parent’s home in the next six (6)
 months;
 2. the appropriate plan for the juveniles is
 reunification with a concurrent plan of adoption;
 3. the juveniles have received adequate care and
 supervision in their present placements;
 4. [DSS] has made reasonable efforts aimed at
 reunification and in eliminating the need to remove
 the juveniles from the parents’ custody; and
 5. it is in the best interest of the juveniles that [DSS]
 continue to be responsible for their well-being.

¶ 12 The trial court ordered in the disposition order, inter alia, that physical and

 legal custody of the children remain vested in DSS with the children remaining in

 their current placements or as DSS deems appropriate; that Respondent-Mother and

 Z.H. receive psychological evaluations and comply with all recommendations, obtain

 and maintain stable housing and employment, complete parenting classes, and

 attend individual therapy; and that the permanent plan shall be reunification with a

 concurrent plan of adoption.

¶ 13 Respondent-Mother received her court-ordered psychological evaluation in

 August 2020. The evaluator recommended that Respondent-Mother receive

 “individual therapy sessions to address her discomfort with stability and her

 avoidance of situations she needs to address.” The evaluator also noted “Respondent-

 Mother continues to be a risk for uprooting her family when adversity arises.” The
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 report concluded that it was “improbable that [Respondent-Mother] is capable of sole

 caregiving to her children” until she addressed her issues, including her unstable

 childhood and adulthood, in therapy.

¶ 14 On 2 September 2020, the trial court held a permanency planning hearing

 before the Honorable Regina Parker. Respondent-Mother testified that at the time

 of the hearing, she was not enrolled in any type of therapy, she had begun new

 employment the week prior, she had completed the first month of a one-year lease of

 a house, and the social worker had cited no problems with her home. The social

 worker testified that Respondent-Mother had not attended therapy since April 2020

 although she had reached out to her therapist; thus, she had not attended individual

 therapy as recommended in her August 2020 court-ordered psychological evaluation.

 The social worker further testified that although Respondent-Mother completed

 parenting classes online, the social worker still recommended a face-to-face parenting

 course. The trial court considered concerns raised in Respondent-Mother’s forensic

 psychological evaluation, her progress with her case plan, and the fact that B.H. had

 previously been placed in foster care. On the date of the hearing, Judge Parker

 entered the permanency planning order, which concluded, inter alia: (1) reunification

 efforts with the child’s parents are futile in that such efforts are inconsistent with the

 child’s health and welfare; (2) the child cannot return home in the next six months;

 (3) it is not in the child’s best interests to return home immediately; and (4) the child’s
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 parental aunt E.H. and her partner L.G. are fit and proper persons to serve as B.H.’s

 guardians. Accordingly, the trial court granted permanent guardianship of B.H. to

 E.H. and L.G. and continued supervised visitation with B.H.’s father and

 Respondent-Mother. Respondent-Mother timely filed written notice of appeal from

 the Order.

 II. Jurisdiction

¶ 15 This Court has jurisdiction to address Respondent-Mother’s appeal from the

 Permanency Planning Order pursuant to N.C. Gen. Stat. § 7B-1001(a)(4) (2019) and

 N.C. Gen. Stat. § 7A-27(b)(2) (2019).

 III. Issue

¶ 16 The sole issue on appeal is whether the trial court properly verified that B.H.’s

 paternal aunt and her partner understood the legal significance of their appointment

 as guardians of B.H., as required by N.C. Gen. Stat. §§ 7B-600(c) and 7B-906.1(j).

 IV. Standard of Review

¶ 17 This Court’s “review of a permanency planning order is limited to whether

 there is competent evidence in the record to support the findings and the findings

 support the conclusions of law.” In re J.C.S., 164 N.C. App. 96, 106, 595 S.E.2d 155,

 161 (2004) (citation omitted). “If the trial court’s findings of fact are supported by

 competent evidence, they are conclusive on appeal.” In re Weiler, 158 N.C. App. 473,

 477, 581 S.E.2d 134, 137 (2003) (citation omitted).
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

¶ 18 “Questions of statutory interpretation are questions of law, which are reviewed

 do novo by an appellate court.” In re P.A., 241 N.C. App. 53, 58, 772 S.E.2d 240, 245

 (2015) (citation omitted). “Under a do novo review, th[is C]ourt considers the matter

 anew and freely substitutes its own judgment for that of the lower tribunal.” In re

 A.K.D., 227 N.C. App. 58, 60, 745 S.E.2d 7, 8 (2013) (citation omitted) (emphasis

 added).

 V. Verification of Guardianship

¶ 19 Respondent-Mother argues the trial court reversibly erred when it granted

 guardianship to B.H.’s paternal aunt and her partner because the court failed to

 satisfy the statutory requirement that the trial court verify both guardians

 understand the legal significance of being appointed as guardians. Specifically, she

 contends the testimony from L.G. and the social worker concerning the guardianship

 was inadequate evidence of either L.G.’s or E.G.’s understanding of the legal

 significance of their appointment as guardians of B.H. Furthermore, she asserts “the

 record contains no evidence of court or home study reports” or other evidence which

 would support the trial court’s findings that the guardians understood the legal

 significance of their appointment.

¶ 20 Petitioner-DSS argues “[t]he trial court sufficiently verified the guardians’

 understanding of the legal significance of being appointed as [B.H.’s] guardians . . . .”

 Similarly, the guardian ad litem maintains “[t]here was ample evidence before the
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 trial court from which it could verify that B.H.’s guardians understood the legal

 significance of guardianship.”

¶ 21 After careful review, we hold the record contains sufficient evidence for the

 trial court to have properly verified that both E.H. and L.G. understood the legal

 significance of their appointments as B.H.’s guardians.

¶ 22 The Juvenile Code, Chapter 7B of the North Carolina General Statutes,

 governs the appointment of a guardian for a juvenile. “In any case . . . when the court

 finds it would be in the best interests of the juvenile, the court may appoint a

 guardian of the person for the juvenile.” N.C. Gen. Stat. § 7B-600(a) (2019). When a

 court determines that the appointment of a guardian shall be the permanent plan for

 a juvenile, “the court shall verify that the person receiving custody or being appointed

 as guardian of the juvenile understands the legal significance of the placement or

 appointment and will have adequate resources to care appropriately for the juvenile.”

 N.C. Gen. Stat. § 7B-906.1(j) (emphasis added); N.C. Gen. Stat. § 906.2(a)(3) (2019)

 (providing guardianship as one of the permanent plans that a court shall adopt at a

 permanency planning hearing); see also N.C. Gen. Stat. § 7B-600(c) (mirroring the

 guardian verification requirements provided in N.C. Gen. Stat. § 7B-906.1(j)).

¶ 23 Here, Respondent-Mother does not dispute the court verified B.H.’s appointed

 guardians to ensure they “have adequate resources to care appropriately for the

 juvenile.” See N.C. Gen. Stat. § 7B-906.1(j); N.C. Gen. Stat. § 7B-600(c). Therefore,
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 our analysis of this case is limited to the issue of whether the court properly verified

 that the appointed guardians “understand the legal significance of the placement or

 appointment.” See N.C. Gen. Stat. § 7B-906.1(j); N.C. Gen. Stat. § 7B-600(c).

¶ 24 This Court has held that the trial court is not required to “make any specific

 findings in order to make the verification[s]” mandated under N.C. Gen. Stat. § 7B-

 906.1(j) and N.C. Gen. Stat. § 7B-600(c). In re J.E., 182 N.C. App. 612, 617, 643

 S.E.2d 70, 73, disc. rev. denied, 361 N.C. 427, 648 S.E.2d 504 (2007). However, “the

 record must contain competent evidence demonstrating the guardian’s awareness of

 [his or] her legal obligations . . . .” In re K.B., 249 N.C. App. 263, 266, 803 S.E.2d 628,

 630 (2016). The proposed guardians need not “demonstrate to the trial court a

 practical application of this understanding prior to or during the [permanency

 planning] hearing.” In re S.B., 268 N.C. App. 78, 88, 834 S.E.2d 683, 691 (2019). “It

 is sufficient that the court receives and considers evidence that the guardians

 understand the legal significance of the guardianship.” In re L.M., 238 N.C. App. 345,

 347, 767 S.E.2d 430, 432 (2014) (citation omitted). Furthermore, when two persons

 are appointed together as guardians for a juvenile, there must be sufficient evidence

 before the trial court that both persons understand the legal significance of the

 appointment. Id. at 349, 767 S.E.2d at 433 (vacating in part an order for

 guardianship where “there was no evidence that the foster mother accepted

 responsibility” for the juvenile and affirming the order in part because the record
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 tended to show the foster father’s desire to take guardianship of the minor child).

¶ 25 At a permanency planning hearing, any evidence may be considered,

 “including hearsay evidence as defined in [N.C. Gen. Stat. §] 8C-1, Rule 801, or

 testimony or evidence from any person that is not a party, that the court finds to be

 relevant, reliable, and necessary to determine the needs of the juvenile and the most

 appropriate disposition.” N.C. Gen. Stat. § 7B-906.1(c). Our Court has concluded:

 [e]vidence sufficient to support a factual finding that a
 potential guardian understands the legal significance of
 guardianship can include, inter alia, testimony from the
 potential guardian of a desire to take guardianship of the
 child, the signing of a guardianship agreement
 acknowledging an understanding of the legal relationship,
 and testimony from a social worker that the potential
 guardian was willing to assume legal guardianship.

 In re E.M., 249 N.C. App. 44, 54, 790 S.E.2d 863, 872 (2016); see In re S.B., 268 N.C.

 App. at 88, 834 S.E.2d at 691 (holding “[t]he testimony of the social worker and a

 court summary were relevant and reliable evidence” to support the trial court’s

 finding that the guardian understood the legal significance of her appointment); In

 re J.E., 182 N.C. App. at 617, 643 S.E.2d at 73 (concluding the trial court adequately

 verified that a minor child’s grandparents understood the legal significance of their

 appointment as guardians based solely on a home study report).

¶ 26 In this case, the trial court made the following pertinent findings of fact in its

 Order:
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 73. [E.H.] and [L.G.] are willing to serve as this child’s
 guardians.
 74. Prior to this hearing, [E.H.] and [L.G.] have
 discussed between themselves the idea of serving as
 this child’s permanent guardian. And, they have
 discussed their desire to serve as guardians with
 Social Worker Vinson.
 ....
 80. [E.H.] and [L.G.] are fit and proper persons to serve
 as this child’s guardians.
 ....
 b. They understand the legal obligations to
 which they are assuming; and, they have
 articulated a willingness to become this
 juvenile’s guardians.

¶ 27 Respondent-Mother does not argue that the aforementioned findings of fact do

 not support the conclusion of law that “[E.H. and L.G.] . . . understand the legal

 significance of being appointed the children’s guardians . . . .” Rather, Respondent-

 Mother challenges finding of fact 80(b) on the grounds that it is “not supported by

 competent evidence in part, as there is insufficient evidence that the proposed

 guardians understood the legal obligation of assuming guardianship of B.H.” We

 disagree.

¶ 28 Although E.H. was not present at the permanency planning hearing, L.G. was

 present and testified as follows:

 Petitioner-DSS’s counsel: And have you and [E.H.]
 discussed taking custody or guardianship of the child?

 [L.G.]: We have.
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 Petitioner-DSS’s counsel: How frequently have y’all
 discussed that?

 [L.G.]: We have discussed it at length basically since she
 came back into our home just because none of us ever really
 want the situation to happen and when it happened for a
 second time you kind of get a pattern so we—we talked
 about it in case things weren’t where we thought that they
 needed to be what we could do and that’s—that’s our
 stance.

 Petitioner-DSS’s counsel: And have y’all also had those
 discussions with the social worker in the case?

 [L.G.]: We have.

 DSS-Petitioner’s counsel: And what is it that you
 understand that you’re proposing to do?

 [L.G.]: To take guardianship over [B.H.] and at that point
 we would facilitate the visits with the parents. That would
 not be under—I guess, right now DSS facilitates those
 visits and I believe that we would at that point then
 facilitate those visits.

 Petitioner-DSS’s counsel: And in regards to the guardian,
 what does the guardian do for a child?

 [L.G.] Meet the child’s needs. I know that that once came
 up but that’s not what a child needs. A child needs to have
 a stable environment. They need an education. They need
 love and care constant and they need to be taught how to
 be successful human beings when they’re able to leave
 home and that’s what we want to teach is—for her never to
 repeat a cycle and to be in a similar position as we’re all in
 today.

¶ 29 Respondent-Mother relies on In re E.M. in support of her argument that L.G.’s
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 testimony was inadequate evidence of the proposed guardians’ awareness of the

 guardianship’s legal significance. 249 N.C. App. 44, 790 S.E.2d 863 (2016). In In re

 E.M., we held that there was “no evidence in the record [to] support[ ] the court’s

 finding that either of the custodians underst[ood] the legal significance of the

 placement.” Id. at 54, 790 S.E.2d at 872. Although only the wife in the custodial

 couple testified, she did not testify “regarding her understanding of the legal

 relationship” nor did the court examine her to confirm she understood the legal

 significance of the placement. Id. at 55, 790 S.E.2d at 872. Moreover, the record did

 not include any competent evidence to support the trial court’s verification. Id. at 55,

 790 S.E.2d at 872. Accordingly, the Court vacated the order of guardianship and

 remanded the matter for further proceedings. Id. at 55, 790 S.E.2d at 872.

¶ 30 We find the case of In re E.M. readily distinguishable from the case sub judice.

 Here, L.G. acknowledged that B.H. was returning to their home, which demonstrates

 E.H.’s and her awareness of their legal responsibilities as guardians from B.H.’s

 previous placement of over one year with them. Furthermore, unlike In re E.M., there

 is evidence in addition to L.G.’s testimony. The social worker’s testimony and the

 home study report substantiated L.G.’s contention that both she and E.H. understood

 the legal obligations of guardianship appointment.

¶ 31 In In re J.E., our Court concluded that a home study report, which referred to

 both “maternal grandparents,” was sufficient proof of both grandparents’
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 understanding of the legal obligations that accompany guardianship appointment.

 In re J.E., 182 N.C. App. at 617, 643 S.E.2d at 73. The report explained the

 grandparents’ desire to have structure and consistency in the child’s life and noted

 that both grandparents “have a clear understanding of the enormity of the

 responsibility of caring for [the minor child].” Id. at 617, 643 S.E.2d at 73. The home

 study report also stated that “[the grandparents] are committed to raising [the child]

 and providing for his needs regardless of what may be required.” Id. at 617, 643

 S.E.2d at 73. We affirmed the trial court’s order granting custody to the juvenile’s

 grandparents. Id. at 619, 643 S.E.2d at 74.

¶ 32 In the instant case, the trial court “receive[d] and consider[ed]” competent

 evidence that both L.G. and E.H. were aware of the legal significance of being

 appointed as guardians. See In re L.M., 238 N.C. App. at 347, 767 S.E.2d at 432. L.G.

 testified that she not only understood the role of a guardian, but she and E.H. had

 discussed the appointment at length with one another as well as with the social

 worker before deciding to take guardianship. Like the home study report in In re

 J.E., which referred to the child’s grandparents collectively, L.G. used the pronoun

 “we” in replying to DSS’s counsel’s questions; thus, her responses provided evidence

 of her and E.H.’s collective understanding of the appointment. See In re J.E., 182

 N.C. App. at 617, 643 S.E.2d at 73. L.G. stated that “she and [E.H.] want to teach”

 [B.H.] “how to be a successful human being[ ]” through love, care, education, and a
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 stable environment. She made clear that it was both her and E.H.’s intention to break

 the cycle of B.H.’s unstable living situations that had initially brought B.H. into their

 home in 2015. L.G.’s testimony demonstrates both she and E.H. are committed to

 raising B.H. and their understanding of the legal significance of being appointed as

 B.H.’s guardian.

¶ 33 L.G.’s testimony was corroborated by the social worker’s testimony at the

 permanency planning hearing in which the social worker testified that she had

 conversations with both E.H. and L.G. regarding the role, and they understood the

 legal significance of guardianship:

 Petitioner-DSS’s counsel: Ms. Vinson, have you had
 discussions with both [E.H.] and [L.G.] about assuming
 guardianship or custody of the child?

 Social Worker: Yes.

 Petitioner-DSS’s counsel: And from your discussions
 with—with them, do they understand that the legal
 significance of that is?

 Social Worker: Yes.

¶ 34 At the hearing, there was no objection to the social worker’s testimony;

 therefore, it is competent evidence. See In re F.G.J., 200 N.C. App. 681, 693, 684

 S.E.2d 745, 753–54 (2009). Nevertheless, Respondent-Mother argues that the social

 worker’s “conclusory testimony is inadequate [evidence] to support the trial court’s

 finding . . . .” This argument is without merit as our Court has held that an
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

 affirmative response of “yes” to the question of whether a guardian understands the

 legal significance of guardianship is sufficient to satisfy the statutory requirement.

 See In re P.A., 241 N.C. App. 53, 60, 772 S.E.2d 240, 245–46 (2015) (concluding a

 guardian’s affirmative one-word response to the trial court’s question of whether she

 understood the nature and legal significance of having the label of permanent

 guardian was sufficient evidence to support the trial court’s finding regarding her

 understanding).

¶ 35 The trial court’s verification is further supported by the 19 February 2020

 home study report. In the home study report, the social worker stated that E.H. and

 L.G. have served as relative placements for B.H. in the past, and both “are aware of

 the time and involvement that is needed to care for [B.H.] . . . .” The home study

 report also noted E.H. and L.G. have “a personal commitment to each other that they

 hold in the same high regard as a legal marriage,” and they “thoroughly discuss all

 issues and matters and make decisions together.” Finally, the social worker stated

 E.H. and L.G. are willing to care for B.H. “for as long as needed.”

 V. Conclusion

¶ 36 The testimony of L.G., the testimony from the social worker, and the home

 study report each provided competent evidence from which the trial court could verify

 that both B.H.’s guardians understood the legal significance of the guardianship

 appointment. We hold the trial court properly performed its statutory duty to verify
 IN RE: B.H.

 2021-NCCOA-297

 Opinion of the Court

the guardians pursuant to N.C. Gen. Stat. § 7B-906.1(j) and N.C. Gen. Stat. § 7B-

600(c).

 AFFIRMED.

 Judges DIETZ and MURPHY concur.